Jeffrey S. CHRISTOPHER, Plaintiff Below, Appellant,

v.

SUSSEX COUNTY, a political subdivision of the State of Delaware; Michael H. Vincent, Sussex County Council President; Samuel R. Wilson, Sussex County Council Vice President; Joan R. Deaver, Sussex County Council Councilwoman; George R. Cole, Sussex County Councilman; Vance C. Phillips, Sussex County Council Councilman; Todd F. Lawson, Sussex County Administrator; and the State of Delaware, Defendants Below, Appellee.

No. 201, 2013.

Supreme Court of Delaware.

Submitted: Sept. 11, 2013.
Decided: Oct. 7, 2013.

Julianne E. Murray, Esquire (argued), and Feliks Finkel, Esquire, Murray Law LLC, Georgetown, Delaware, for appellant.

Edward K. Black, Esquire, Department of Justice, Wilmington, Delaware, for appellee, State of Delaware.

David N. Rutt, Esquire, Moore & Rutt, P.A., Georgetown, Delaware, for appellee, Sussex County.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices (constituting the Court en Banc).

HOLLAND, Justice:

On August 9, 2012, the plaintiff-appellant, Jeffrey S. Christopher, Sheriff of Sussex County, Delaware ("Sheriff"), filed his Second Amended Complaint in the Superior Court of the State of Delaware naming as defendants-appellees, Sussex County, a political entity, and its individual Council members: Michael H. Vincent, Samuel R. Wilson, Joan R. Deaver, George B. Cole and Vance C. Phillips, and the County Administrator, Todd F. Lawson, all in their representative capacity. Collectively, these defendants shall be referred to as "Sussex County." The Second Amended Complaint also named the State of Delaware ("State") as a defendant. The Complaint sought a declaratory judgment regarding the powers of the sheriff in Delaware, particularly the Sheriff in Sussex County. It also sought a determination that recently enacted House Bill 325 ("HB 325") is unconstitutional.

Specifically, the Sheriff asked the Superior Court for a declaratory judgment stating that he has arrest powers in criminal cases as a core or fundamental tool to perform his constitutional designation as a "conservator of the peace." The Superior Court requested briefing on the constitutionality of then recently-enacted HB 325, which eliminated the Sheriff's arrest powers in criminal cases. All parties filed cross-motions for Summary Judgment. The Superior Court issued a Memorandum Opinion granting Summary Judgment to Sussex County and the State, holding "that the common law authority and responsibilities of the Sheriff are subject to modification and restriction" by statutory enactments of the General Assembly. Therefore, the court held that HB 325 was constitutional.

The Delaware Constitution states that "[s]heriffs shall be conservators of the peace within the counties respectively in which they reside."[1] According to the Sheriff, once embedded in the Delaware Constitution, the sheriff's obligation to act as a "conservator of the peace" became a constitutional obligation and the powers necessary to carry out that obligation be-

---

1. Del. Const. art. XV, § 1 (1897).

came constitutional—not common law—powers.[2] The Sheriff claims that the essence of the term "conservator of the peace" includes the power to arrest in criminal cases.

The Sheriff asks this Court to rule that the phrase "sheriff shall be the conservator of the peace" embodies (contains) a constitutional right under the Delaware Constitution, and that arrest power is a core tool of the "conservator of the peace" as it applies to the sheriff because a peace officer cannot "[conserve] the peace" without the ability to arrest. The Sheriff submits that by stripping him of arrest powers, the General Assembly violated the Delaware Constitution because it took away a tool indispensable to his constitutional obligation to act as a "conservator of the peace." Therefore, the Sheriff submits, HB 325 impermissibly conflicts with the Delaware Constitution by redefining the term "conservator of the peace." The Sheriff argues that if the General Assembly wants to change the powers of a constitutional office, it must amend the Delaware Constitution.

In this opinion, we hold that the General Assembly may not abrogate a constitutional office or take away the core duties of a constitutional officer without enacting an amendment pursuant to the Delaware Constitution.[3] However, we also hold that the sheriff's common law arrest power is not a fundamental or a core duty of his constitutional role as a "conservator of the peace." Because the common law arrest power of a sheriff was not fundamental, but was merely incidental, to his role as a "conservator of the peace" when the 1776, 1792, 1831, and 1897 Delaware Constitutions were adopted, the arrest power can be modified or even eliminated by statute.

Therefore, the judgment of the Superior Court is affirmed on that basis.

### Facts

On June 19, 2012, the Delaware General Assembly enacted HB 325 with the purpose of " 'clarifying ... that the county sheriffs and their deputies do not have arrest authority.' " The synopsis to HB 325 states that "[h]istorically the sheriffs and deputies have not exercised arrest authority and the Attorney general's office has given an opinion that the Sheriff's power to arrest is no greater than that shared by any citizen."

HB 325 amended several sections of the Delaware Code. Title 11, section 1901(2) of the Delaware Code defines public peace officers as having arrest powers in criminal cases. HB 325 amends title 11 to exclude sheriffs from having arrest power in criminal cases. HB 325 amended section 1935 of title 11 to prohibit sheriffs from executing fresh pursuit of any person. HB 325 repeals section 2103 of title 10, taking away the sheriff's power to assemble *posse comitatus.* Section 2103 of title 10 explicitly states that "[s]heriffs and deputy sheriffs shall not have any arrest authority." It further provides that "sheriffs and deputy sheriffs may take into custody and transport a person when specifically so ordered by a judge or commissioner of the Superior Court."

### Interpreting State Constitutions

State constitutions differ from the United States Constitution in at least two important respects. First, state constitutions are frequently rewritten or amended.[4] Second, state constitutional amendments are made in the text of the

---

**2.** *See* Del. Const. art. XXV (1776).

**3.** *See Collison v. State ex rel. Green,* 2 A.2d 97 (Del.1938).

**4.** *See* Robert F. Williams, *State Constitutional Law Processes,* 24 Wm. & Mary L.Rev. 169, 198 (1983).

document rather than added as a series of attachments, as is done with the United States Constitution.[5]

The initial Delaware Constitution was written in 1776, and was the first state constitution to be drafted by a convention elected expressly for that purpose.[6] Delaware's Constitution was revised by other conventions in 1792, 1831, and 1897. Delaware's 1897 Constitution also has been amended many times over the last century by legislative enactments passed by two consecutive sessions of the General Assembly.[7]

The Delaware Bill of Rights provides an excellent example of provisions of the Delaware Constitution that have remained constant. The present format first appeared in the 1792 Delaware Constitution.[8] In providing for the right to trial by jury, the 1792 Delaware Constitution stated that it shall be as "heretofore." [9] The right that existed "heretofore" in 1792 was the common law right to trial by jury guaranteed by the 1776 Delaware Constitution.[10] The Delaware Bill of Rights remained virtually unchanged in the 1831 and 1897 Constitutions. Accordingly, to understand the word "heretofore" in the present 1897 Delaware Constitution, one must refer to the Delaware Constitutions of 1831, 1792 and, ultimately, to the retention of the

common law right provided for in Delaware's 1776 Constitution.[11]

We make these observations to illustrate the significance of knowing the original text, context, and evolution of any phrase that appears in the present Delaware Constitution. This is especially important because, unlike the United States Constitution, changes have been made directly to the text of the Delaware Constitution and not by a series of amendments at the end.

The terms in the 1897 Delaware Constitution that are at issue in this appeal are "conservator of the peace" and "sheriff."

### Conservator of the Peace

■ The Sheriff argues that he has arrest authority by virtue of his description in the 1897 Delaware Constitution as a "conservator of the peace." The term "conservator of the peace" appeared for the first time in Delaware law in Article XII of the Constitution of 1776: "The Members of the Legislature and Privy Councils shall be Justices of the Peace for the whole state during their continuance in trust; and the Justices of the Courts of Common Pleas shall be Conservators of the Peace in their respective counties." Sheriffs are absent from the class of persons designated as "conservators of the peace" in the 1776 Delaware Constitution.

---

**5.** *See* Frank P. Grad, *The State Constitution: Its Functions and Form for Our Time*, 54 Va. L.Rev. 928, 94243, 94547, 97273 (1968).

**6.** *See* George A. Billias, *American Constitutionalism and Europe, 1776–1848, in* American Constitutional Abroad 1314, 1923 (George A. Billias ed., 1990); Donald S. Lutz, *Popular Consent and Popular Control: Whig Political Theory in the Early State Constitutions* 45 (1980).

**7.** Del. Const. art. XVI, § 1.

**8.** The Declaration of Rights and Fundamental Rules of the Delaware State was adopted by the convention on September 11, 1776.

Shortly thereafter, the first Constitution of the State of Delaware was enacted on September 20, 1776. *See* Gordon S. Wood, *Foreword: State Constitution–Making in the American Revolution*, 24 Rutgers L.J. 911, 921 (1993).

**9.** *See* Del. Const. art. I, § 4 (1792). *See generally Claudio v. State*, 585 A.2d 1278, 1289–90 (Del.1991).

**10.** *See Claudio v. State*, 585 A.2d at 1290–91.

**11.** *Id.*

Not until the 1792 Delaware Constitution were sheriffs, and other office holders added to the list of conservators of the peace:

> The members of the Senate and House of Representatives, the Chancellor, the Judges of the Supreme Court, and the Court of Common Pleas, and the Attorney General, shall by virtue of their offices, be conservators of the peace throughout the state; and the Treasurer, Secretary, Clerks of the Supreme Court, Prothonotaries, Registers, Recorders, Sheriffs, and Coroners shall, by virtue of their offices, be conservators thereof, within the counties respectively in which they reside.[12]

The counterpart section contained in the 1831 Delaware Constitution is virtually identical:

> The members of the senate and house of representatives, the chancellor, the judges, and the attorney-general shall, by virtue of their offices, be conservators of the peace throughout the State; and the treasurer, secretary, prothonotaries, registers, recorders, sheriffs, and coroners shall, by virtue of their offices, be conservators thereof within the counties respectively in which they reside.[13]

The 1897 Delaware Constitution identifies a more limited number of officials as "conservators of the peace," but still includes the sheriff in that description:

> Section 1. The Chancellor, Judges and Attorney–General shall be conservators of the peace throughout the State; and the Sheriffs shall be conservators of the peace within the counties respectively in which they reside.[14]

When the 1776 Delaware Constitution was adopted, the phrase "conservators of the peace" was undoubtedly derived from the use of that term in England to collectively *describe* a group of officials having a variety of different duties and responsibilities. That English history is summarized, as follows:

> The foundation of the whole system of criminal procedure was the prerogative of keeping the peace, which is as old as the monarchy itself, and which was, as it still is, embodied in the express, "The King's Peace," the legal name of the *normal state of society.* This prerogative was exercised at all times through officers *collectively described* as the Conservators of the Peace. The King and certain great officers (the chancellor, the constable, the marshal, the steward, and the judges of the King's Bench) were conservators of the peace throughout England, but the ordinary conservators of the peace were the sheriff, the coroner, the justices of the peace, the constable, each in his own district.[15]

Similarly, during the American colonial period, "conservators of the peace" were understood to describe a range of officials from judges to sheriffs who, by virtue of their office, played some part in the maintenance of "the normal state of society."

Nevertheless, the Sheriff argues that being designated a conservator of the peace is not a descriptive term but, rather, confers a vested constitutional right equivalent to the right of a trial by jury. That is not a valid analogy. Trial by jury is a fundamental right that is *defined* in pre-

---

**12.** Del. Const. art. VII, § 1 (1792).

**13.** Del. Const. art. VII, § 1 (1831).

**14.** Del. Const. art. XV, § 1.

**15.** *State v. Mitchell,* 212 A.2d 873 (Del.Super.Ct.1965) (citing Sir James Fitzjames Stephen, *Criminal Procedure from the Thirteenth to the Eighteenth Century* (1883), *in* Committee of the American Association of Law Schools, 2 Select Essays in Anglo–American Legal History Ch. 34 (Boston: Little, Brown & Company, 1908)) (emphasis added).

cisely the same language in the Delaware Constitutions of 1792, 1831 and 1897.[16]

We hold that the term "conservator of the peace" in the 1776 Delaware Constitution and each successive Delaware Constitution has always been used only to *describe* a changing variety of public officials. That generic collective description has never *defined* the powers of any specifically named constitutional office holder. The Sheriff's argument to the contrary is without merit.

The preliminary questions in this appeal are: first, what powers did the sheriff possess; and second, by what process can those powers be changed?

### Attorney General Analogy

The 1776 Delaware Constitution refers to the office of sheriff only in terms of the manner by which the sheriffs were to be appointed.[17] The 1776 Delaware Constitution did not enumerate any specific powers for the office of sheriff. In the absence of a specific definition in the Delaware Constitution, we must look to the statutes and common law in effect at the time the 1776 Delaware Constitution was adopted to determine the authority of a specific office holder described as "conservator of the peace."[18]

Although the duties and powers of the sheriff in 1776 have not been addressed by the courts in Delaware, a similar question did arise in connection with the powers of the Attorney General. In *Darling Apartment Co. v. Springer*,[19] this Court the question of the powers and duties of the office of Attorney General as a conservator of the peace. The majority opinion stated:

In England the office is of ancient origin. It was vested by the common law with a great variety of duties. The Attorney General was the law officer of the Crown, and its only legal representative in the courts. We derive our system of jurisprudence from England, and we adopted the office of Attorney General as it existed in England as a part of the governmental machinery necessary for the protection of public rights and the enforcement of public duties by proper proceedings in courts of justice. The powers and duties of the office of Attorney General are so numerous and varied that neither the framers of our several constitutions nor the legislatures have ever undertaken exhaustively to enumerate them, *and where not defined by statute those powers and duties must be sought for in the common law.* The authorities substantially agree that, in addition to those conferred on it by statute, the office is clothed with all of the powers and duties pertaining thereto at common law; and, as the chief law officer of the State, the Attorney General, *in the absence of express legislative restriction to the contrary*, may exercise all such power and authority as the public interests may from time to time require. *In short, the Attorney General's powers are as broad as the common law unless restricted or modified by statute.*[20]

---

16. Del. Const. art. I, § 4 (1897).

17. The sheriffs and coroners of the respective counties shall be chosen annually, as heretofore; and any person, having served three years as sheriff, shall be ineligible for three years after; and the president and privy council shall have the appointment of such of the two candidates, returned for said offices of sheriff and coroner, as they shall think best qualified, in the same manner that the gover-

nor heretofore enjoyed this power. Del. Const. art. XV (1776).

18. *See Darling Apartment Co. v. Springer*, 22 A.2d 397 (Del.1941).

19. *Darling Apartment Co. v. Springer*, 22 A.2d 397 (Del.1941).

20. *Id.* at 403 (emphasis added) (citations omitted).

The majority opinion held "[t]he accepted principle [is] that, in the absence of express legislative restriction, the Attorney General, as the chief law officer of the State, may exercise all the powers and authority incident to the office at common law."[21]

Judge Rodney, in a concurring opinion, engaged in a historical analysis of the office of Attorney General. He noted that, "[a] number of other states, like our own, merely provide in their constitutions for an Attorney General, but make no mention of the duties of the office."[22] He also noted "the great majority [of other states] hold that the office of Attorney General was vested with certain common law powers and duties which still exist, except as modified by Statute."[23]

Judge Rodney reviewed the origins of the office of Attorney General, concluding that the framers of the early state constitutions created an office by name only with the knowledge that such offices had generally recognized legal powers, duties and functions. Judge Rodney stated:

> We are not primarily concerned with the exact list of powers and duties appertaining to the office of Attorney General, but rather with the question as to any authority in the Legislature to make some change in these, so-called inherent powers, even though remotely derived from the common law.

Article 25 of the Constitution of 1776 says:

> The common law of England, as well as so much of the statute law as has been heretofore adopted in practice in this State, shall remain in force, unless they shall be altered by a future law of the legislature * * *.

It would seem that no common law was ever adopted in this State, except such as might be altered by a future law of the Legislature. Nor could it well be. The common law is largely founded on custom long acquiesced in or sanctioned by immemorial usage. It always bends and gives way to express statutory enactment intended to be in direct opposition. The common law powers inhering to an office are, at most, a part of the common law, and can rise no higher than their source.

I am of the opinion that the Attorney General is the chief law officer of the State, clothed, except as altered by the Constitution or by legislation, with the powers and duties, criminal and civil, which inhered to that office when it first became a constitutional one.

I am equally of the opinion that the General Assembly, holding, except as restricted by the Constitution, the residuum of power and, as "parens patriae," the prerogatives of sovereignty, can add to or subtract from the common law powers of the Attorney General, to the same extent as the Sovereign could have done before the State came into being, and when the powers were created by or acquiesced in by the Sovereign. If this were not true then much legislation concerning sheriffs, coroners and other constitutional officers of common law origin, whose duties are not expressly defined, would suffer from the same taint. Thus could be brought into question much legislation enacted through the century and a half of the State's existence, touching the care and custody of prisoners and the manner of selecting juries, and countless other modifications of common law duties of an officer, where merely the name of the office was car-

---

**21.** *Id.* at 404.

**22.** *Id.* at 405.

**23.** *Id.* at 406.

ried into the Constitution. Thus as of 1776, when the first Constitution was adopted, would be crystallized many of the most important relations of society, and the people, through the legislative branch, could neither make needed and desirable improvements, nor, possibly, even correct abuses.[24]

### Substance of the Sheriff's Office

■ The New Hampshire Supreme Court applied Judge Rodney's rationale in its analysis of the constitutional office of a sheriff in that state:

"Where the sheriff is named in the Constitution his duties are the same as they were at the time the Constitution was adopted." *His duties and authority, however, are not rendered unalterable by virtue of the sheriff being a constitutional officer.* The sheriff's duties and responsibilities, "unless expressly prescribed by the state constitution, are not immutable or exclusive, but are subject to legislative alteration and control." "The legislature is entirely at liberty to increase, decrease, or modify the powers and duties incident to this position." Thus, the sheriff maintains his common law powers, duties and responsibilities as they were at the time the constitution was adopted, except insofar as they have been modified by constitutional provisions or legislative enactments.[25]

We agree and hold the New Hampshire Supreme Court's analysis is equally applicable to the office of sheriff in Delaware.

In *Seth v. State,*[26] this Court adopted Judge Rodney's concurring opinion in *Darling Apartment Co.* as the law of Dela-

ware. Importantly, in doing so, we also adopted Judge Rodney's recognition that the power of the General Assembly to enact statutes that lessen or modify the common law powers of the Attorney General is not unlimited. In support of that proposition, Judge Rodney cited the 1863 Delaware case of *State v. Morris.*[27]

■ In *State v. Morris,* the court held that when the legislature exercises the power to take away from a constitutional officer the *substance* of the office itself, that is not a legitimate exercise of the legislature's power to enact statutes to regulate the duties of the constitutional office. We agree and reaffirm the holding in *State v. Morris,* as it applies to the General Assembly's statutory regulation of the sheriff and other "name only" constitutional offices with undefined powers. That requires us next to examine the *substance* of the office of sheriff when the 1776 Delaware Constitution was adopted.

### Colonial Delaware Sheriffs

In *Commonwealth v. Leet,*[28] the Pennsylvania Supreme Court set forth a scholarly summary of the history of sheriffs in England. At the time of the Magna Carta in 1215, the sheriff was the chief law enforcement officer of the shire or county.[29] However, that role was not immutable and changed dramatically over time. As the role of the judiciary evolved in England, "the sheriff's role evolved from that of judge to that of court officer with authority." [30]

On September 22, 1676, Delaware Governor Andross promulgated an ordinance

---

**24.** *Id.* at 407–08.

**25.** *Linehan v. Rockingham Cnty., Commis.,* 151 N.H. 276, 855 A.2d 1271, 1274–75 (2004) (emphasis added) (citations omitted).

**26.** *Seth v. State,* 592 A.2d 436 (Del.1991).

**27.** *State v. Morris,* 1 Houst.Cr.Cas 124 (Del. 1863).

**28.** *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299 (1994).

**29.** *Id.* at 302. "Sheriff" is an abbreviated version of the original "shire reeve."

**30.** *Id.* at 301 (emphasis added).

introducing the Duke of York's laws, and "establishing courts of justice on the Delaware in conformity therewith." [31] The office of sheriff was a feature of colonial governance in Delaware under the Duke of York's laws. According to Professor Reed's authoritative History of Delaware, after the Duke of York became protector of the Delaware colony, he not only restructured the then-existing courts in Delaware by ordinance but also changed the role of the sheriff.

> The ordinance of 1676 made the "high sheriff" of the river an English sheriff instead of a Dutch schout, as Lovelace's order of 1672 had failed to do. Upon resuming his office in 1674, Captain Cantwell was still referred to as "Sheriff or Schout." In August, 1676, however, the council in New York, considering "how inconvenient it was for the Sheriff to preside, and be Judge in a Court, whose Orders and Warrants he is to execute" (as the Dutch schout did), resolved that henceforth the Delaware sheriff, "whose duty it is to represent matters to the court, and to execute the law or court orders," should not preside over or have any vote in the court. The sheriff's new status was confirmed by the ordinance of the following month, which also authorized him to select an "under Sheriff or Marshall" to be approved by the court. *Thus the sheriff became the servant, rather than the master of the court.* [32]

*By statute*, the Duke of York's laws authorized the sheriff to issue subpoenas and summon witnesses to trial,[33] to conduct arrests (a power shared in common with other officers),[34] to represent, but not to judge, any poor person in court if such person so requested (a power shared in common with constables),[35] to administer corporal punishment (another power shared in common with constables),[36] to issue warrants (a power shared in common with justices of the peace),[37] to execute warrants to summon and empanel a jury,[38] to collect taxes,[39] and to operate the pillory.[40]

### 1776 Delaware Constitution

From 1676 until the 1776 Constitution, the principal duties of the sheriff in Delaware were defined by statute. But, in 1776, the sheriff in England had common law powers that are summarized in Blackstone's Commentaries on the laws of England.[41] According to Blackstone, the sheriff's common law powers included the right to make arrests without warrants for breaches of the peace committed in his presence.

In 1776, Delaware sheriffs were not, as a matter of common law, exercising general law enforcement responsibilities. While the sheriff had common law arrest power, that power was exercised as incidental to the sheriff's performance of his court related duties. Accordingly, when the 1776

---

31. Henry Graham Ashmead, History of Delaware County, Pennsylvania 221 (Philadelphia: L.H. Everts & Co., 1884).

32. H. Clay Reed, *The Early New Castle Court*, Vol. IV *Delaware History* (195051) (emphasis added).

33. *Id.* at 7.

34. *Id.* at 8.

35. *Id.* at 11.

36. *Id.* at 25–26.

37. *Id.* at 34.

38. *Id.* at 33.

39. *Id.* at 48–49.

40. *Id.* at 25–26.

41. William Blackstone, 4 Commentaries on the Laws of England 292 (London: A. Strahm & W. Woodhall 11th ed. 1791).

Delaware Constitution was adopted, the *substance* of the sheriff's office is most accurately characterized as that of *assisting the courts*.

### 1792 Delaware Constitution

The sheriff had common law and statutory powers under the 1776 Delaware Constitution, even though in the 1776 Delaware Constitution he was not described as a conservator of the peace. Those common law powers were not expanded when the 1792 Constitution included the sheriff as one of the collective group of officials *described* as "conservators of the peace." Although the sheriff continued to have the common law power to arrest for offenses that were committed in his presence, the *substance* of his office in 1792 continued to be defined as *providing assistance to the courts*.

### Statutory Enactments

That the *substance* of the office of a sheriff in Delaware was to *assist the courts* is confirmed and reflected in a series of statutory enactments that began in 1792 and continued up to the adoption of the 1897 Delaware Constitution.[42]

In 1792, what was known as the twelve pound act passed enabling Justices of the Peace to issue the executions for debts 12 pounds or less to the sheriffs who became responsible for the debts if they failed to act on the executions within a certain time limit.[43]

By 1793, a law passed requiring sheriffs and coroners to file the following oath before entering office: "I A.B. do swear, or affirm, that in executing every writ or precept, that shall come to my hand, for the return of jurors, I will not summon before him as a juror, by hatred, malice or ill will, fear, favor or affection, or any partiality whatever." Sheriffs were expected to choose "sober and judicious persons, of fair character, and none other" as jurors.[44]

Also in 1793, an act passed authorizing sheriffs to serve replevins, and to take bonds in double value of the goods distrained in replevins of distresses for rent.[45] Sheriffs were also required to give security.[46]

Beginning in 1802, sheriffs were required to be present at Court of Chancery hearings.[47] By 1805, under the Supreme Court's orders, sheriffs were required to remove incompetent goalers or keepers of prisons. Failure to do so within one month resulted in a forty dollar fine.[48]

In 1811, an act passed requiring sheriffs to annually post and deliver to inspectors, the offices needed filling in the general election. Additionally, the sheriff provided each inspector with written or printed forms, tally lists and returns, ballot boxes, sealing was, tape and an alphabetical list of white free male citizens twenty-one years and older residing and assessed in each district. After the voting, sheriffs held the sealed ballot boxes until the next session of the General Assembly.[49]

---

**42.** *See* Delaware Public Archives, http: archives.delaware.gov/collections/aghist/3455. shtml (citing Leon deValinger, Jr., *Development of Local Government in Delaware, 1638–1682* (1935) (unpublished Master of Arts Thesis, University of Delaware) (on file with Delaware Public Archives)).

**43.** *2 Del. Laws,* ch. CCL.

**44.** *2 Del. Laws,* ch. VIII.

**45.** *2 Del. Laws,* ch. XXXIX.

**46.** *2 Del. Laws,* ch. XXXII.

**47.** *3 Del. Laws,* ch. LXXXIX.

**48.** *3 Del. Laws,* ch. CLXXXII.

**49.** *4 Del. Laws,* ch. CLII.

Also 1811, sheriffs were empowered to summon Grand jurors to Quarter Sessions and to Court of Oyer and Terminer; Petit jury to the Supreme Court, Court of Common Pleas, and Court of Quarter Sessions and every other inquest or juror or witness necessary for the executing of justice.

Beginning annually in 1817, the sheriff, jointly with the Levy Court Commissioners, selected the jurors to serve in the courts for the succeeding year.[50] By 1818, all executions of debt above forty shillings were directed by the Justices of the Peace to Sheriffs for recovery and return.[51] And in 1819, it became illegal for Sheriffs to buy or bid off any property or articles for thee own use at sales.[52]

In 1849, an act passed authorizing sheriffs to summon "good and lawful Men" to witness executions and anyone else they deemed it proper to invite.[53] That same year, the sheriffs' duties regarding the summoning of juries was reaffirmed.[54]

Beginning in 1871, Justices of the Peace could order sheriffs to seize fishing boats operating without a license. To facilitate this process, sheriffs were authorized to form an armed posse and use force and firearms of overtake the violators.[55] New Castle County Sheriffs were freed to collecting petty fines when an act passed in 1871 stating that only writs of summons, attachments, or pro-

cesses of execution exceeding fifty dollars could be directed to the sheriff.[56]

In 1873, sheriffs became responsible for showing what lien or liens the money arising from a sale was applied to and how much was applied to each lien.[57] Cruelty to animals became an issue in 1875 which resulted in a new duty for sheriffs. They were authorized to arrest and bring before the justice of the peace anyone being cruel to an animal.[58]

The foregoing statutory history[59] demonstrates that, when the 1897 Delaware Constitution was adopted, although the common law arrest powers of the sheriff could be exercised when offenses were committed in his presence, the General Assembly had only conferred statutory arrest powers upon the sheriff in a few specific matters and those were primarily related to the sheriff's performance of court related duties.

### Delaware Sheriffs After 1897

Nine years after the enactment of the 1897 Delaware Constitution, Judge Victor Woolley published his seminal treatise on Delaware law. He described the office of sheriff as follows:

> *Sheriffs.* Sheriffs are ministerial officers, who execute and carry into effect the orders and the judgments of the court.
>
> The sheriff is the officer to whom all process is directed, unless there be some cause of exception to him, in which case

50. 5 *Del. Laws*, ch. CXLV.

51. 5 *Del. Laws*, ch. CLXXIX.

52. 5 *Del. Laws*, ch. CCXXXIX.

53. 10 *Del. Laws*, ch. CCCLXXIV.

54. 10 *Del. Laws*, ch. CCCCXV.

55. 14 *Del. Laws*, ch. 72.

56. 14 *Del. Laws*, ch. 93.

57. 14 *Del. Laws*, ch. 559.

58. 15 *Del. Laws*, ch. 62.

59. *See* Delaware Public Archives, http: archives.delaware.gov/collections/aghist/3455. shtml (1682) (citing Leon deValinger, Jr., *Development of Local Government in Delaware, 1638–1682* (1935) (unpublished Master of Arts Thesis, University of Delaware) (on file with Delaware Public Archives)).

the Prothonotary may direct the process to the Coroner. The sheriff is the proper officer to execute all writs whether original or of execution, except where he himself is a party defendant.[60]

A text published in 1967 described the sheriffs in Delaware, thusly:

> The sheriff is, under the state constitution, a conservator of the peace in the county in which he is located. Basically, however, he is an officer of the Superior Court responsible for summoning jurors for jury duty and witnesses for court appearances. He is also responsible for issuing notices of levies and conducting of sales of property, in accordance with the order of the court.[61]

The duties of the sheriff vary from state to state.[62] The focus of this appeal is on the powers and duties of sheriffs in Delaware. Our examination of Delaware history reflects that throughout the eighteenth, nineteenth and most of the twentieth century, the sheriff retained his common law power to arrest for offenses committed in his presence. However, general law enforcement responsibilities were never the substance of the office of sheriff in Delaware.

### HB 365 Is Constitutional

■ When the framers of the 1776 Delaware Constitution created the office of sheriff by name only, they conferred upon that office those generally recognized legal powers, duties and functions belonging to the office at the time. In 1776, Delaware sheriffs were an arm of the courts, not general law enforcement officers. Although Delaware sheriffs had common law power to arrest for offenses committed in

their presence, that power was exercised only as ancillary or incident to performing duties for the courts.

In 1981, the General Assembly enacted 11 *Del. C.* ch. 84 establishing a comprehensive regulatory scheme to train police officers.[63] The General Assembly excluded sheriffs and their deputies from this comprehensive training scheme, and precluded anyone who did not meet the training requirements from enforcing the laws of the State. To eliminate any ambiguity concerning whether the office of the sheriff retains any common law power to investigate or arrest, the General Assembly enacted HB 325 to clarify and specifically provide that no such powers are vested in that office. That affirmative act of the General Assembly extinguished any general investigative or arrest powers that the Sheriff might otherwise have claimed under the common law, however the General Assembly expressly preserved that authority of the Sheriff to take into custody and transport a person when specifically so ordered by the Superior Court.

The only limitation on the General Assembly's right to modify or eliminate a common law power of the sheriff is that a statute cannot abrogate the *substance* of the office itself. Eliminating the sheriff's common law power of arrest does not abrogate the substance of the office of sheriff. We hold that HB 365 is constitutional because it is within the General Assembly's authority to statutorily regulate the undefined, incidental common law powers of a name only constitutional office, such as the sheriff.

---

**60.** 1 Victor B. Woolley, Practice in Civil Action and Proceedings in the Law Courts of the State of Delaware, Vol. I, § 93 (1906).

**61.** Cy Liberman, James M. Rosbrow & Harvey Rubenstein, *The Delaware Citizen: The*

*Guide to Active Citizenship in The First State,* 328 (3d ed. 1967).

**62.** James A. Conser, et al., *Law Enforcement in the United States* 8284 (3d ed. 2013).

**63.** 63 *Del. Laws,* c. 31 (1981).