SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5256

Marc S. Casarino, Esquire
Nicholas R. Wynn, Esquire
White and Williams LLP
600 North King Street
Suite 800
Wilmington, Delaware 19801

Brian T.N. Jordan, Esquire
Jordan Law, LLC
704 N. King Street
Suite 600
Wilmington, Delaware 19801

Re:   ***Smith v. First State Animal Center and SPCA, Inc., et al.*,
      C.A. No. S15C-12-025 ESB**

On Defendants' Motion for Summary Judgment:   GRANTED

Date Submitted:   July 5, 2018
Date Decided:   October 4, 2018

Dear Counsel,

The case at bar arises out of the seizure of Nancy and John Smith's dog and the arrest and

criminal prosecution of the Smiths. As a result of these actions, the Smiths filed suit against Kent

County Society for the Prevention of Cruelty to Animals, Inc. ("KCSPCA")[1], Katelyn Pepper, Sandra

Galloway, David Hulse, Ruth Agnew, Kevin Usilton, Drew May, Mary Palacio, and Sherri

Warburton alleging (1) the deprivation of their constitutional rights in violation of 42 *U.S.C.* § 1983;

(2) intentional infliction of emotional distress; (3) false arrest; (4) false imprisonment; and (5)

malicious prosecution. I previously ruled on the collective Defendants' Motion to Dismiss, which

was granted in part with respect to several defendants for each count. The Motion to Dismiss was

---

[1] The Court notes that the correct legal name for the entity identified as KCSPCA by the
Smiths' complaint is "First State Animal Center and SPCA, Inc." However, to maintain
consistency among the decisions issued in this case, I will continue to refer to it as KCSPCA.

granted with respect to all of Nancy Smith's claims. Pending before the Court is the collective Defendants' Motion for Summary Judgment on the remaining claims brought on behalf of John Smith (hereinafter, "Smith"). For the reasons set forth herein, the Motion for Summary Judgment is GRANTED.

## I.      FACTUAL BACKGROUND

The facts leading up to this lawsuit were summarized in my previous decision and I incorporate them herein:

> This case began when the Smiths' dog, Millie, attacked and injured a neighboring dog and its owner on March 16, 2015. Defendant Pepper, an animal control officer employed by KCSPCA, went to the Smiths' residence to investigate the incident. No one was home at the time so Defendant Pepper left a note on the Smiths' door. Defendant Pepper later spoke with Mr. Smith by phone. Mr. Smith requested that any further conversation take place with he and his wife's attorney present. On March 18, 2015, Defendant Palacio, an animal control officer employed by KCSPCA, contacted Mr. Smith despite his earlier request that his attorney be present for any conversations. On March 19, 2015, Defendant Palacio again contacted Mr. Smith despite knowing he had asked that all conversations take place with his attorney present. On March 19, 2015, Defendant Warburton, an animal control officer employed by KCSPCA, determined that Millie was a dangerous dog and had to be seized. The Smiths allege that Defendants Warburton and Palacio contacted the Savannah Animal Hospital and pressured the hospital staff to prepare a report that made the incident and Millie look more vicious and dangerous than it or she was.
>
> On March 19, 2015, someone from Defendant KCSPCA called the Smiths and told them that they would be at their home at 8:00 a.m. the next day to seize Millie. No one at Defendant KCSPCA advised the Smiths' attorney that they were going to seize Millie. On March 20, 2015, Defendants Palacio and Hulse, an animal control officer employed by KCSPCA, called Mrs. Smith despite her request that all conversations take place with her attorney present and informed her they would be arriving later than scheduled to seize Millie. The Smiths' attorney called Defendant Palacio and reminded him that he represented the Smiths and that the Smiths would voluntarily quarantine Millie. Defendant KCSPCA told the Smiths' attorney that they still intended to seize Millie. The Smiths' attorney advised Defendant KCSPCA that there would be no voluntary surrender of Millie and that a search warrant would be necessary. Defendant KCSPCA, without the help of the Delaware State Police or the

2

Attorney General's office, applied for and was granted a search warrant to seize Millie by the Justice of the Peace Court. According to the Smiths' complaint, Defendant Galloway, an animal control officer employed by KCSPCA, arrived at the Smiths' residence with a Delaware State Police officer and executed the search warrant on March 20, 2015. The Smiths stated that they complied with the search warrant and turned Millie over to the Defendants. While Millie was under the Defendants' control, the Smiths allege that the Defendants (1) did not give Millie an examination within 72 hours of seizing her, (2) failed to administer the proper vaccines to her, and (3) prevented the Smiths' veterinarian from examining Millie. On March 25, 2015, in response to Millie's seizure, the Smiths filed an emergency writ of prohibition with the Superior Court claiming that the Defendants had no legal authority to obtain a search warrant and seize Millie. The writ of prohibition was dismissed as moot since Millie had been returned to the Smiths by the time the Superior Court heard the writ of prohibition.

On March 31, 2015, the Defendants, without any assistance from the Delaware State Police or the Attorney General's office, sought and obtained arrest warrants from the Justice of the Peace Court for the Smiths. Defendant Pepper filed an affidavit of probable cause for the arrest of John Smith on charges of (1) maintaining a dangerous animal, and (2) hindering prosecution. Defendant Pepper filed an affidavit of probable cause for the arrest of Nancy Smith on charges of (1) maintaining a dangerous animal, and (2) owning a dog that, while at large, bit a person. On April 3, 2015, the Smiths turned themselves in to the Justice of the Peace Court, where they both entered not guilty pleas. Following their not guilty pleas, the Smiths went to Troop 4 of the Delaware State Police. At Troop 4, the Smiths were fingerprinted, processed, and photographed by Defendant May, who is an animal control officer employed by KCSPCA. The charges against Mr. Smith were later dropped by the Department of Justice. Mrs. Smith pled guilty to one count of having a dog at large. At all times relevant hereto the Smiths allege that Defendant KCSPCA was acting under the color of state law pursuant to its contract with Sussex County Council to provide animal control services in Sussex County, Delaware. The Smiths allege that the Defendants obtained the arrest warrant in retaliation for them (1) challenging their authority to seize Millie, (2) asserting their right to have an attorney present for any conversations with them, and (3) sending a veterinarian to check on Millie. The Smiths allege they incurred $3,913.50 in attorneys' fees and $479.73 in veterinarian bills due to the unconstitutional actions of the Defendants. The Smiths now seek damages based on the Defendants' conduct in seizing Millie and for their arrest and criminal prosecution.[2]

---

[2] *Smith v. Kent Cty. Soc'y for the Prevention of Cruelty to Animals, Inc.*, 2016 WL 5404097, at **1-2 (Del. Super. Ct. Sept. 28, 2016).

The parties have since stipulated to the dismissal of Defendant May.

## II. STANDARD OF REVIEW

This Court will grant summary judgment only when no material issues of fact exist, and the moving party bears the burden of establishing the non-existence of material issues of fact.[3] Once the moving party has met its burden, the burden shifts to the non-moving party to establish the existence of material issues of fact.[4] Where the moving party produces an affidavit or other evidence sufficient under Superior Court Civil Rule 56 in support of its motion and the burden shifts, the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial.[5] If, after discovery, the non-moving party cannot make a sufficient showing of the existence of an essential element of his or her case, summary judgment must be granted.[6] If, however, material issues of fact exist, or if the Court determines that it does not have sufficient facts to enable it to apply the law to the facts before it, summary judgment is inappropriate.[7]

The Court will not engage in speculation and conjecture.[8] However, where "evidence is *merely colorable*, or is *not significantly probative*, summary judgment may be granted."[9] Finally, "a

---

[3] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[4] *Id.* at 681.

[5] Super. Ct. Civ. R. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[6] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991); *Celotex Corp.*, *supra*.

[7] *Ebersole v. Lowengrub*, 180 A.2d 467, 471 (Del. 1962).

[8] *In re Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. Ct. 1986).

[9] *Stayton v. Clariant Corp.*, 2014 WL 28726, at *2 (Del. Jan. 2, 2014) (citation omitted).

plaintiff's testimony must be substantiated by direct evidence found in the record."[10]

## III.    DISCUSSION

### A.    Summary of Remaining Claims

The following claims against the following individuals and entities survived Defendants' Motion to Dismiss and the dismissal of Defendant May:

1)      Intentional infliction of emotional distress against Defendant Galloway, Defendant Hulse, Defendant Warburton, Defendant Palacio, Defendant Pepper, Defendant Usilton, Defendant Agnew, and Defendant KCSPCA;

2)      False arrest and false imprisonment against Defendant Pepper and Defendant KCSPCA;

3)      Malicious prosecution against Defendant Pepper and Defendant KCSPCA; and

4)      Violation of 42 *U.S.C.* § 1983 against Defendant Galloway, Defendant Hulse, Defendant Palacio, Defendant Pepper, and Defendant KCSPCA.

### B.    The Power to Swear Out Arrest and Search Warrants

It is undisputed that Smith turned himself into the authorities after Defendant Pepper obtained a warrant for his arrest. Although it is less clear whether Smith voluntarily surrendered Millie to Defendant KCSPCA, for the purposes of this motion, I will assume Smith surrendered his dog pursuant to the search warrant obtained by Defendant Galloway. Therefore, underlying almost all of the surviving claims is the question of whether an animal control officer ("ACO") possesses the power to swear out arrest and search warrants and, if so, to what extent. Defendants assert it is settled Delaware law that ACOs have the legal authority to swear out arrest and search warrants.

---

[10] *Addison v. East Side Charter Sch. of Wilmington, Inc.*, 2014 WL 4724895, at * 2 (Del. Super. Ct. Sept. 19, 2014) (citation omitted).

Smith strongly contests Defendants' position, and argues any person swearing out an arrest or search warrant must, in fact, have attended the police academy and be a certified police officer. For the reasons set forth below, I conclude that an ACO has the power to swear out arrest and search warrants so long as the arrest and search warrants concern the enforcement of animal welfare laws of the State of Delaware. Although I am convinced the statutes and case law establish an ACO's authority to swear out warrants as part of his official duties, in this case and as will be discussed further in the context of Smith's § 1983 claim, the ACOs are also entitled to qualified immunity as to the search warrant obtained for Millie and the arrest warrant obtained for Smith.

Delaware's animal control welfare laws have been amended since the incident at the center of this litigation occurred. It is now clear under the Delaware Code that ACOs have the power "to investigate, search, seize, detain and arrest when investigating and enforcing animal cruelty and fighting, dog control, or dangerous animal laws."[11] As I noted in my decision on the Defendants' Motion to Dismiss, in 2015, however, the law was less clear-cut. Nevertheless, the KCSPCA was responsible for "the enforcement of all laws which are enacted for the protection of dumb animals."[12] "Enforcement" is defined by Black's Law Dictionary as, "The act or process of compelling compliance with a law, mandate, command, decree, or agreement."[13] The Code also provided that an ACO "*shall* seize and impound a dog suspected of being dangerous or potentially dangerous"

---

[11] 16 *Del. C.* § 3031F(e). The laws relating to animal welfare are now codified at 16 *Del. C.* §§ 3001F - 3081F.

[12] 3 *Del. C.* § 7902 (repealed 2016).

[13] Black's Law Dictionary (10th ed. 2014).

under particularized circumstances.[14] Furthermore, the Code decreed ACOs had authority to execute arrest warrants related to animal welfare laws:

> Any warrant of arrest, or other process, issued under or by virtue of the several laws in relation to cruelty to animals may be directed to and executed by any agent so appointed by either the Delaware or Kent County Society for the Prevention of Cruelty to Animals of this State.[15]

The Attorney General for the State of Delaware has also acknowledged the powers held by ACOs in two opinions. While the opinions do not specifically address the right of an ACO to apply for and swear out warrants, the language used by the Attorney General is instructive. The Attorney General observes that KCSPCA is "specifically empowered by a state government entity... to make investigations and to enforce all of Delaware's animal anti-cruelty laws..."[16] In a supplemental decision regarding the same issue, the Attorney General deduces that KCSPCA is "empowered to undertake regulatory functions of the State and conduct investigations."[17] In concluding KCSPCA has the power to investigate, the Attorney General notes, "The mandate to enforce *necessarily implies* a corresponding duty to make investigations. In other words, authority to enforce cannot be exercised without authority to make investigations."[18] The same analysis applies here: KCSPCA's charge to enforce the animal welfare laws necessitates an ACO's ability to swear out warrants in that context.

---

[14] 9 *Del. C.* § 922(a) (since amended and currently codified at 16 *Del. C.* § 3073F) (emphasis added).

[15] 3 *Del. C.* § 7904 (repealed 2016).

[16] Dep. Op. Atty. Gen. 12-IIB05 (Del. A.G.), found at 2012 WL 1244481.

[17] Del. Op. Atty. Gen. 12-IIB08 (Del. A.G.), found at 2012 WL 2904209.

[18] *Id.* n. 1 (emphasis added).

7

Turning to case law, an ACO's power to apply for search warrants has not been directly addressed previously. However, I conclude existing case law further bolsters an ACO's ability to swear out warrants.

Smith cites *Christopher v. Sussex County*[19] for the proposition that only certified police officers can enforce the law. That case presented a broader question than the one currently before the Court. In *Christopher*, the sheriff for Sussex County sought a declaratory judgment stating the sheriff had arrest powers in criminal cases "as a core or fundamental tool to perform his constitutional designation as a 'conservator of the peace.'"[20] *Christopher* is distinguishable from this case. The sheriff claimed arrest powers under common law and argued the General Assembly lacked the constitutional authority to modify or limit that common law power. As noted above, Defendants assert their actions were authorized by statute. In *State v. Pettingill*, the Court of Common Pleas noted the New Castle County Code had provided ACOs could exercise police powers in discharging their duties.[21] Similarly, pursuant to statute, the Department of Correction and Department of Natural Resources and Environmental Control give its officers the authority to exercise police powers in executing their official duties.[22] In other words, officers can possess and exercise police powers even though they are not certified police officers under Title 11.

---

[19] 77 A.3d 951 (Del. 2013).

[20] *Id.* at 952.

[21] 2004 WL 7325668, at *1 (Del. Ct. Com. Pl. Nov. 22, 2004).

[22] 11 *Del. C.* § 4321 (Department of Correction); 20 *Del. C.* § 8003A (Department of Natural Resources and Environmental Control).

Historically, even lay persons have been able to obtain warrants from magistrates.[23] Although exercised rarely, that power extends even today, as evidenced by a more recent Delaware case, *Lengle v. Dukes*.[24] In *Lengle*, the complainant swore out an arrest warrant before a magistrate for his neighbor for criminal trespass.

As a matter of practical effect, ACOs must have the power to swear out warrants or otherwise add an unnecessary administrative step by requesting a law enforcement officer to appear before a Justice of the Peace and swear to the veracity of the information to which only the ACO was privy. The bottom line is that an ACO's job is to know the animal welfare laws; respond to and investigate situations where an animal's welfare is in danger; and, when necessary, take appropriate action to enforce the animal welfare laws. The job is, in fact, the equivalent of a police officer's job with respect to the investigation of and enforcement of the traffic and criminal codes.

Against this legal landscape, I will examine the merits of Smith's remaining claims.

## C. Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress ("IIED") requires proof that the defendant intentionally engaged in extreme or outrageous behavior that caused the plaintiff severe emotional distress.[25] Outrageous conduct is "conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community."[26] "Generally, the case is one in which the

---

[23] *See, e.g., Brown v. Selfridge*, 224 U.S. 189, 190 (1912) (a case arising out of a prosecution, which was initiated by a private citizen who swore out a search warrant).

[24] 1982 Del. Super. LEXIS 757 (Del. Super. Ct. June 9, 1982).

[25] *Hunt* ex rel. *DeSombre v. State of Delaware*, 69 A.3d 360, 367 (Del. 2013).

[26] *Id.* (internal quotation marks and citation omitted).

recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"[27] The Court must determine, in the first instance, whether the defendant's conduct may be considered so extreme and outrageous to allow recovery.[28] On a motion for summary judgment, the defendant must demonstrate that, even when the facts are viewed in a light most favorable to the plaintiff, he is entitled to prevail as a matter of law.[29]

Smith argues that, individually and in aggregate, Defendants' conduct in contacting Smith, arresting Smith, seeking a gag order from the Court, pressuring Millie's veterinarian to alter records, and in refusing to care for Millie properly constituted outrageous behavior. I disagree and find that recovery cannot be permitted under the facts of this case.

At this point in the litigation, the material witnesses have been deposed. Discovery has fleshed out the factual background and informs my analysis.

Millie attacked and injured Smith's neighboring dog, Spike, and Spike's owner on March 16, 2015. Subsequently, Defendant KCSPCA initiated an investigation. In so doing, Defendant Pepper contacted Smith. Smith requested legal representation be present for further conversations. Defendant Pepper testified at her deposition that she "told him that [she] had to come check for the rabies vaccination, make sure that [Millie] was up-do-date on her rabies...."[30] Defendant Pepper tried to explain the quarantine procedure and Smith asserted that the ACOs would need to speak to his

---

[27] *Mattern v. Hudson*, 532 A.2d 85, 86 (Del. Super. Ct. 1987) (internal quotation marks and citation omitted).

[28] *Hunt*, 69 A.3d at 367.

[29] *Mattern*, 532 A.2d at 86.

[30] Defendants' Brief In Support of Motion For Summary Judgment, Exhibit F, at p. 55 (hereinafter, "Def. Br., Ex. __, at p. __").

10

attorney. Defendant Pepper reported back to her boss, Defendant Palacio, who stated she would contact Smith's attorney. The following day, Defendant Pepper was not scheduled to work. She asked Defendant Palacio to follow up on a suspected dog bite case. Defendant Palacio contacted Smith to set up a meeting. Smith gave Defendant Palacio the name and number of his attorney, John Brady. Defendant Palacio then called Mr. Brady and left a voice message. While Defendant Palacio awaited a return call from Mr. Brady, she continued her investigation and visited with Spike's owner, Michelle Keck (hereinafter, "Keck"), to document Keck's version of events. Defendant Palacio inspected the wound Keck allegedly suffered at the hands of Millie and took pictures of it for her records. Keck wrote out a statement for Defendant Palacio. Defendant Palacio then interviewed neighbors, the Moodys, who witnessed the incident. The Moodys told Defendant Palacio that they witnessed Millie and Spike fighting but they did not know what happened or how the altercation took place.[31]

Defendant Palacio then proceeded to Savannah Animal Hospital in Lewes, Delaware, to review Spike's rabies vaccination history, observe Spike, and check on the severity of Spike's injuries.[32]

After consulting with Defendant Usilton, Defendant Warburton decided Millie would have to be quarantined as a "dangerous" or "potentially dangerous" dog due to the severity of Millie's attack on Spike.[33] An animal suspected of being a dangerous or potentially dangerous dog cannot be

---

[31] Def. Br., Ex. G, at pp. 108-109.

[32] "I collected a vet report on the severity of the injuries and the type of procedure they did to repair Mrs. Keck's dog. And then I obtained rabies information on her dog." Def. Br., Ex. G, at p. 100.

[33] Def. Br., Ex. H, at pp. 75-77.

11

home-quarantined. In other words, the nature of Defendant KCSPCA's investigation evolved as the officers acquired additional information about the severity of Spike's injuries. The ACOs now sought to remove Millie from the Smith home in accordance with their statutory authority.[34] When they explained to Smith their need to impound Millie, Smith advised the officers that, pursuant to advice of legal counsel, they needed to obtain a warrant. The ACOs did so. Millie was taken to the KCSPCA shelter ("the Shelter") and held, pending a hearing before the dog control board on her classification.

Again, Smith argues the Defendants' actions, taken collectively, give rise to intentional infliction of emotion distress. I find no rational mind could conclude the facts, up to this point, individually or collectively, establish conduct warranting the exclamation, "Outrageous!" The officers were merely conducting an investigation into a dog bite case, as was their responsibility under the Delaware Code. Therefore, Smith must show that the Defendants' actions from this point forward support the submission of his IIED claim to a jury.

Once Millie was taken to the Shelter, Smith argues she was denied appropriate medical treatment. Smith also posits someone at the KCSPCA tried to influence a veterinarian at Savannah Animal Hospital to falsify Millie's records in an effort to portray her as an aggressive dog. Smith asserts that KCSPCA sought a gag order from the Justice of the Peace Court and this action caused him emotional distress. Finally, Smith cites his arrest allegedly without probable cause in support

---

[34] Section 922 of Title 9 of the Delaware Code provided, in relevant part: "An animal control constable or dog warden shall seize and impound a dog suspected of being dangerous or potentially dangerous when the warden has reasonable cause to believe that the dog has engaged in 1 or more of the following: ... (2) Killed or inflicted serious physical injury upon a domestic animal, provided the domestic animal was on the property of its owner or under the immediate control of its owner..." (since amended and currently codified at 16 *Del. C.* § 3073F).

12

of his IIED claim. I conclude none of these acts or omissions, neither individually nor collectively, arise to the level of outrageous behavior that would entitle Smith to recovery.

KCSPCA unfortunately failed to administer vaccinations it was required to administer to Millie within the prescribed time frame.[35] Millie was quarantined on March 20 after she attacked another dog on March 16. She was held in State custody pending a hearing on her classification as a dangerous dog on April 13, 2015. At the time Millie was quarantined, Defendant Palacio had been able to confirm with Savannah Animal Hospital that Millie was current on all of her vaccinations. Millie was eligible for vaccination pursuant to 16 *Del. C.* § 3002F(b) at the time her quarantine period ended, on March 25. Millie was ultimately vaccinated as required on April 8. In fact, Smith now claims she was over-vaccinated and this over-vaccination left her susceptible to health problems. Smith testified Millie was returned to them with a case of pneumonia, which he claims can be traced to the Defendants' failure to vaccinate Millie within seventy-two hours, and anxiety, which can be traced to Millie's experience at the kennel. Notably, there has been no medical testimony, records, or bills for treatment introduced to support this claim.

At the time unaware that Millie had not been vaccinated as required, Smith sent an independent veterinarian to inspect Millie at the Shelter. This veterinarian was not permitted to examine Millie. Defendant Usilton testified Defendant Warburton informed him that an outside veterinarian wanted to see Millie. "I asked if it was Millie's regular veterinarian and she said no. Then I said there's no reason for her to see her. We have our own veterinarian on staff who would

---

[35] Defendant KCSPCA was found to have violated 16 *Del. C.* § 3002F for failing to vaccinate timely Millie. Smith's Answering Brief, Exhibit C, at p. 15 (hereinafter, "Smith Br., Ex. __, at p. __").

13

be happy to look at anything that Millie would have."[36] Defendant Usilton testified that no one had sent an independent veterinarian to inspect an animal at the Shelter before and that he likely would have permitted Millie's regular veterinarian to see her. But, Defendant Usilton reasoned, there was policy in place pursuant to which any medical ailments of Millie's would be attended. All told, Millie spent less than a month in State custody.

Viewing the facts in a light most favorable to Smith, neither the inaction by Defendant KCSPCA to vaccinate Millie within seventy-two hours of the end of her quarantine nor the alleged over-vaccination resulted in a diagnosable health problem for either Millie or Smith. Similarly, Smith has failed to show how the failure to permit an independent veterinarian to examine Millie resulted in distress to either the dog or her owner. The alleged distress caused to Smith as a result of the Shelter's actions and inaction was not "so severe that no reasonable person could be expected to endure it."[37] Millie's treatment at the Shelter is not sufficient to sustain a claim for intentional infliction of emotional distress.

Similarly, Smith's argument that someone at the KCSPCA attempted to influence the staff at Savannah Animal Hospital to alter Millie's records is without merit. The evidence shows that someone, to date, unidentified, contacted Savannah Animal Hospital and left a message, asking for a copy of Millie's previous bite report. Dr. Christine Clark returned the officer's call and told the officer that there was no bite report because Millie had been the victim not the aggressor in the

---

[36] Def. Br., Ex. M, at p. 86.

[37] *Tilghman v. Delaware State Univ.*, 2012 WL 3860825, at *5 (Del. Super. Ct. Aug. 15, 2012) (internal quotation marks and citations omitted).

14

previous incident.[38] No one at Savannah Animal Hospital created a bite report for the previous incident. Assuming, without deciding, pressure from an ACO was applied, that pressure was not effective. I find that the inquiry from KCSPCA as to the previous incident does not rise to the level of conduct that could be considered outrageous. It does not support an IIED claim.

Smith's argument that the request for a gag order from the Justice of the Peace Court caused him distress simply defies logic. A court imposes a gag order in order to keep parties from litigating their case outside of the courtroom. In this case, Defendant KCSPCA asked for a gag order. The Justice of the Peace granted the request after Smith's attorney asked that the gag order apply to both sides of the case. The purpose of a gag order is to protect the parties' "right to have the merits of [the] case determined by a fair and impartial jury which will decide the issues solely upon the evidence presented at trial."[39] Smith's contention that the Defendants' request for order that the case not be tried in the press or on social media was "outrageous" is completely without merit.

With respect to Smith's claim that his unlawful arrest supports an IIED claim, I refer back to my earlier discussion of the authority of the ACO's to swear out arrest warrants. A Justice of the Peace issued an arrest warrant for Smith on two charges: maintaining a dangerous animal and hindering prosecution. Smith contends the Defendants' conduct in obtaining and executing the warrants was outrageous. I have already concluded that the Defendants' conduct in obtaining and executing the search warrant for Millie was not outrageous as a matter of law. I likewise conclude

---

[38] Def. Br., Ex. T, at pp. 7-11.

[39] *Sokolove v. Marenberg*, 2013 WL 6920602, at * 2 (Del. Super. Ct. Dec. 20, 2013).

the same is true of the Defendants' conduct in obtaining the arrest warrant for Smith.[40] The evidence shows Smith owned Millie, a dog that had attacked another dog, Spike, in such a fashion that Spike required surgery. The undisputed evidence also shows that Smith was, perhaps understandingly so, frustrated with the proceedings and reluctant to cooperate with the ACOs, characterizing their investigation as a "witch hunt."[41] At Smith's deposition, counsel reviewed the affidavit of probable cause in support of the arrest warrant, line by line, at his deposition. Smith did not challenge the underlying finding of probable cause for the maintaining a dangerous animal charge. Although he disputed certain characterizations of his actions with regard to the hindering prosecution charge, he affirmed the factual substance of the affidavit: he was suspicious of the investigation and wary of cooperating with the ACOs. As such, Defendant Pepper had probable cause to seek an arrest warrant for Smith for maintaining a dangerous animal and hindering prosecution. "In Delaware, it has been found that when police had probable cause to arrest a plaintiff, their conduct could not be found extreme or outrageous."[42] To the extent Smith argues he was targeted, for lack of a better word, by the investigating officers, "liability does not extend to mere ... indignities, ... annoyances, petty oppressions, or other trivialities...."[43]

---

[40] Defendant Pepper did not execute the arrest warrant. Smith turned himself in to the Justice of the Peace Court on April 3, 2015.

[41] Def. Br., Ex. E, at p. 149.

[42] *Smith v. Delaware State Police*, 2014 WL 3360173, at *5 (Del. Super. Ct. July 8, 2014) (citation omitted).

[43] *Jackson v. Walgreens Corp.*, 2013 WL 2145938, at *3 (Del. Super. Ct. May 15, 2013) (internal quotation marks and citation omitted).

As Smith all but acknowledges, he suffered no separate or discrete injury as a result of the his arrest for hindering prosecution *vis a vis* his arrest for maintaining a dangerous animal. I also note, in the context of his claim of IIED, Smith makes much of the fact that he wished to have an attorney present for conversations with the ACOs. The record reflects the ACOs did, in fact, honor his request and contacted Mr. Brady. Indeed, the reason the ACOs obtained a search warrant in the first place, instead of seizing Millie as they were authorized to do by statute, was at the request of Smith's legal counsel.

I find there are no issues of material fact as to the ACOs' conduct during the course of their investigation and that it does not rise to outrageous conduct as a matter of law. Defendant Galloway, Defendant Hulse, Defendant Warburton, Defendant Palacio, Defendant Pepper, Defendant Usilton, Defendant Agnew and Defendant KCSPCA are all entitled to summary judgment on Smith's claim of IIED.

## D. False Arrest and False Imprisonment

Smith alleges the Defendants arrested him against his will and without any legal authority to do so. "The tort of false arrest differs from the tort of false imprisonment only in terminology."[44] A plaintiff must show (a) a restraint that is both (b) unlawful and © against his will.[45] The Delaware Supreme Court has elaborated:

---

[44] *Hunt*, 69 A.3d at 368 (internal quotation marks and citation omitted).

[45] *Id.*

17

The restraint may be accomplished by physical force, by threats of force or intimidation or by the assertion of legal authority. False imprisonment or false arrest is generally defined as the deprivation of the liberty of another without his consent and without legal justification. Legal justification is held to be the equivalent of legal authority and is judged by the principles applicable to the law of arrest.[46]

When a person has been lawfully arrested by proper legal means, even if the person is ultimately acquitted, "the arrest is not 'false' and an action for false imprisonment will not lie."[47] As I observed previously, the warrant for Smith's arrest complied with the formal requirements of the law and was valid. Thus, "the arrest of the plaintiff is legally authorized."[48] The ACOs had the legal authority to swear out an arrest warrant for charges related to the enforcement of Delaware's animal welfare laws. Their actions were further validated by the Justice of the Peace who signed off on the warrant. "A judicial officer's finding of probable cause is a complete defense to state law tort claims for false imprisonment."[49] Specifically, the chain of causation for an officer's unlawful arrest has been broken by the intervening exercise of the independent judgment of a magistrate.[50] Under these circumstances, Defendant Pepper and Defendant KCSPCA are entitled to summary judgment as a matter of law on Smith's claims of false arrest and false imprisonment.

### E.     Malicious Prosecution

There are six elements in an action for malicious prosecution: (1) a prior initiation of some

---

[46] *Id.* (internal quotation marks and citation omitted).

[47] *Boulden v. Turner*, 2007 WL 3378662, at *4 (Del. Super. Ct. Apr. 12, 2007) (internal quotation marks and citation omitted).

[48] *Id.* (internal quotation marks and citation omitted).

[49] *Tuppeny v. City of Wilmington*, 2015 WL 1383864, at * 6 (D. Del. Mar. 24, 2015).

[50] *Sekscinski v. Harris*, 2006 WL 509541, at * 5 (Del. Super. Ct. Jan. 18, 2006).

18

regular judicial proceedings against the now-plaintiff; (2) such former proceedings must have been initiated by the now-defendant; (3) the former proceedings must have terminated in favor of the now-plaintiff; (4) the now-defendant must have harbored malice in instituting the former proceedings; (5) there was an absence of probable cause in the former proceedings; and (6) the now-plaintiff suffered injury or damage resulting from the former proceedings.[51] The tort of malicious prosecution has been "historically disfavored" in Delaware, in favor of other tools at the Court's disposal to address bad faith litigation.[52]

> Because the Court does not want to discourage the prosecution of alleged criminal actors, "[i]t is only when one person prosecutes another with malice and without probable cause that the law makes him liable for his actions." Elements of both malice and probable cause are required. For the purpose of malicious prosecution, malice has been defined as an act "done with a wrongful or improper motive or with a wanton disregard of the rights of that person against whom the act is directed." Actual spite, ill will or a grudge do not necessarily establish malice.

> Similarly, probable cause for this purpose has been defined as "a reasonable ground for suspicion or belief, supported by circumstances sufficiently strong in themselves as to warrant a reasonably cautious and prudent person in the belief that the person accused is guilty of the offense with which he is charged. The fact that the accused was ultimately acquitted of the underlying charges "has nothing to do with the question of want of probable cause." The existence of probable cause is determined at the time the underlying proceedings were commenced.[53]

Viewing the evidence most favorably for Smith, there was probable cause for the ACOs to conclude that Smith was unwilling to cooperate with their investigation and was stymying their ability to enforce the animal welfare laws – *i.e.*, he was hindering prosecution. But, in the event

---

[51] *Stidham v. Diamond State Brewery, Inc.*, 21 A.2d 283, 284 (Del. Super. Ct. 1941).

[52] *Blue Hen Mech., Inc. v. Christian Bros. Risk Pooling Trust*, 117 A.3d 549, 551 (Del. 2015).

[53] *Sekscinski*, 2006 WL 509541, at * 2 (citations omitted).

19

Defendant Pepper did not have probable cause to support the charge of hindering prosecution, Smith has failed to introduce evidence that would support a jury's finding that Defendant Pepper acted with actual malice in seeking the warrant for Smith's arrest for hindering prosecution. At best, perhaps he could convince a jury that Defendant Pepper acted out of frustration. But this frustration does not give rise to a claim of malice.

Defendant Pepper and Defendant KCSPCA are entitled to summary judgment as a matter of law on Smith's claim they maliciously prosecuted him.

**F.**     **42 *U.S.C.* § 1983**

1.     Officers in their Official Capacities

Smith reasserts all of the aforementioned claims as violations of his constitutional rights in derivation of 42 *U.S.C.* § 1983. I find Defendant Galloway, Defendant Hulse, Defendant Palacio, and Defendant Pepper, acting in their official capacities, are protected by the doctrine of qualified immunity.

The Delaware Supreme Court recently discussed the doctrine of qualified immunity in the *Hunt* decision, cited *supra*, wherein the Court relied heavily upon the United States Supreme Court's opinion in *Saucier v. Katz*. In *Saucier*, the United States Supreme Court held:

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence...
> The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."
>
> ...

20

A court required to rule upon the qualified immunity issue must consider, then, this threshold issue: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?

...

[I]f a violation could be made out on a favorable view of the parties' submission, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition....

...

[We have emphasized] "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

...

If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.[54]

I acknowledge that the General Assembly significantly tweaked the animal welfare laws and, by extension, the law enforcement powers of ACOs, with amendments to the Delaware Code enacted in 2016. Whether those changes were made to clarify the law as the General Assembly believed it to exist in 2015 or to grant ACOs additional powers is unclear. Nevertheless, to the extent an ACO's ability to enforce the animal welfare laws in 2015 was ambiguous, Defendants are protected in this case by the doctrine of qualified immunity. Defendant Hulse testified that his training included the

---

[54] *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001) (citations omitted). In a subsequent case, *Pearson v. Callahan*, 555 U.S. 223 (2009), the United States Supreme Court held that courts must no longer follow the sequence test put forward in *Saucier* in all cases. However, I have concluded the test's structure is helpful in this case.

21

so-called "law book" with the relevant animal welfare laws. The book was updated with amendments to the laws. Defendant Hulse himself trained other ACOs using the law book. ACO instruction also emphasized that an ACO needed a police officer to accompany him to execute a warrant. Defendant Galloway testified that she had received in-house training on the process for obtaining and executing search warrants. Defendant Palacio acknowledged there is a line between charges ACOs are authorized to investigate in their official capacity and those they are not. Specifically, she testified that, as an ACO, she would not conduct a traffic stop, even if she witnessed a dog in danger in the vehicle.

Assuming Defendants did not have actual authority to swear out search and arrest warrants for violations of Delaware's animal welfare laws, Smith is able to show that Defendants' conduct violated his constitutional right to be free from unlawful search and seizures. However, Smith is unable to show this right was clearly established: that is, he is unable to establish that it would have been clear to a reasonable ACO – charged with enforcing the animal welfare laws; trained on the process of obtaining and executing warrants for violations of the animal welfare laws; and authorized by statute to seize animals under certain circumstances without a warrant – that his conduct was unlawful in seeking to obtain the search warrant for Millie and the arrest warrant for Smith for violations of the animal welfare laws and the related charge of hindering prosecution. Summary judgment is appropriate on all of the § 1983 claims with regard to the previously identified ACOs.

2.    Defendant KCSPCA

Smith also seeks to hold Defendant KCSPCA accountable for the ACO's alleged violations of his constitutional rights. In *Monell v. Department of Social Services*, the United States Supreme Court held that local governing body or agency "can be sued directly under § 1983 for monetary,

declaratory, or injunctive relief where... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[55] However, a governing body or agency:

> cannot be liable for the constitutional torts of its employees; that is, it cannot be held liable on a *respondeat superior* theory. Rather, liability will attach only where the plaintiff establishes the [agency] engaged in a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights.[56]

Here, Smith does not "designate any specific facts to raise a triable issue of fact as to the existence of any policy, custom, or decision that led to the purported violation of his rights under the federal constitution."[57] As such, Defendant KCSPCA is also entitled to summary judgment as a matter of law on Smith's § 1983 claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED as to all of Smith's the remaining claims.

**IT IS SO ORDERED.**

Very truly yours,

/s/ E. Scott Bradley

E. Scott Bradley

ESB/tll

oc: Prothonotary

---

[55] 436 U.S. 658, 690 (1978) (footnote omitted).

[56] *Strong v. Dunning*, 2013 WL 3481452, at *4 (Del. Super. Ct. June 27, 2013) (citations omitted).

[57] *Id.*, at *5.